[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-10652

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

_versus_

NICHOLAS GRINDLE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 4:24-cr-00015-WMR-WEJ-1

_____

Before LAGOA, KIDD, and MARCUS, Circuit Judges.

PER CURIAM:

Nicholas Grindle appeals his total sentence of 87 months' imprisonment for conspiracy to possess with intent to distribute a mixture containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C), and conspiracy to commit bribery, in violation of 18 U.S.C. §§ 371, 666(a)(1)(B). On appeal, Grindle argues that his sentence is procedurally and substantively unreasonable. In response, the government moves to dismiss the appeal based on the appeal waiver in Grindle's plea agreement. Grindle has not responded to the government's motion to dismiss. After careful review, we dismiss the appeal.

We review the validity of a sentence appeal waiver *de novo*. *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008). We also review *de novo* whether a defendant knowingly and voluntarily waived his right to appeal his sentence. *United States v. Benitez-Zapata*, 131 F.3d 1444, 1446 (11th Cir. 1997).

Plea agreements "are like contracts and should be interpreted in accord with what the parties intended." *United States v. Rubbo*, 396 F.3d 1330, 1334 (11th Cir. 2005). A sentence appeal waiver found in a plea agreement will be enforced if it was made knowingly and voluntarily. *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993). To establish that a sentence appeal waiver was made knowingly and voluntarily, the government must show either that: (1) the district court specifically questioned the defend-

ant about the waiver during the plea colloquy; or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver. *Id*. at 1351; *see also* Fed. R. Crim. P. 11(b)(1)(N) (requiring that the district court inform the defendant of the terms of an appeal waiver). The touchstone for assessing whether an appeal waiver was knowing and voluntary is whether it was clearly conveyed to the defendant that he was giving up his right to appeal under most circumstances. *United States v. Boyd*, 975 F.3d 1185, 1192 (11th Cir. 2020). "[W]here it is clear from the plea agreement and the Rule 11 colloquy, or from some other part of the record, that the defendant knowingly and voluntarily entered into a sentence appeal waiver, that waiver should be enforced without requiring the government to brief the merits of the appeal." *United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997). Statements made under oath at a plea colloquy carry a strong presumption of truth. *Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014).

In *United States v. Dixon*, we considered whether evidence that a defendant had a diminished mental capacity rendered his sentence appeal waiver unknowing and involuntary. 901 F.3d 1322, 1342 (11th Cir. 2018). After being convicted at trial, the defendant agreed not to appeal his sentence in exchange for the government's agreement to recommend a term of 360 months rather than life imprisonment. *Id*. at 1334. The defendant's mental capacity had previously been an issue in the case, but after a hearing, the district court found that he had knowingly and voluntarily waived his right to appeal. *Id*. On appeal, we held that the defendant's waiver was

enforceable.  *Id*. at 1342.  We noted that the defendant unambiguously told the district court that he understood that he would not be able to appeal his sentence.  *Id*.  We also rejected the defendant's argument that "cognitive deficits" prevented him from making a "cogent decision" about the appeal waiver because the district court specifically found that the waiver was knowing and voluntary and it possessed evidence that the defendant was competent and had feigned mental illness to avoid responsibility.  *Id*.

Here, Grindle's appeal waiver is enforceable.  As the record reflects, Grindle pleaded guilty to two conspiracy counts, arising out of his employment as a correctional officer for the Georgia Department of Corrections at Hays State Prison, where Grindle accepted payments from inmates in exchange for smuggling contraband into the prison.  Grindle's plea agreement contained an appeal waiver provision, which provided:

> To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or upward variance above the sentencing guideline range as calculated by the District Court.  Claims that the Defendant's counsel rendered constitutionally ineffective

assistance are excepted from this waiver. The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct appeal of the sentence imposed, the Defendant may file a cross-appeal of that same sentence.

At the change-of-plea hearing, the district court began by confirming that both Grindle and his counsel had signed the plea agreement where their signatures were marked. The district court placed Grindle under oath and explained how the hearing would proceed, telling Grindle to alert the court if he did not understand something, to which Grindle agreed. Grindle also confirmed that he had read and understood the relevant documents and was not under the influence of drugs or alcohol nor had he been treated for a drug or alcohol addiction.

The district court next questioned Grindle about whether he had the mental capacity to understand and agree to the plea agreement and the appeal waiver. Grindle informed the court that he had been diagnosed with bipolar disorder and had been prescribed medication for the disorder, but he had been dropped from the treatment program because his work schedule caused him to miss appointments. Grindle also disclosed that he had experienced at least one manic episode in the past and had suffered from depression. However, he advised the court that he could function and understand the proceedings without the medication and was not having either a manic or depressive episode at the time of the

hearing; he was only feeling anxious.  Grindle's counsel added that he had discussed Grindle's mental health issues with him and had no concerns about Grindle's competency to enter a plea.

At that point, the government was prompted to summarize the terms of the plea agreement, including the sentence appeal waiver, and Grindle confirmed that he agreed with the government's summary and had read and understood the terms of the agreement before signing it.  The district court later specifically questioned Grindle about the terms of the appeal waiver, explaining that he was waiving his right to appeal his sentence "with three narrow exceptions."  The district court specified that Grindle could appeal his sentence if the government first appealed his sentence; if his lawyer rendered constitutionally ineffective assistance such that his skill fell "below th[e] minimum level of competency that all defendants are entitled to have from their attorneys"; or if his sentence was longer than the upper end or longest term of imprisonment suggested by the guidelines.  The court highlighted that, other than those grounds, he would not be able to file an appeal.  Grindle said he understood the court's explanation and no one had promised him anything that induced him to waive his right to appeal, and his lawyer stated that he and Grindle had discussed the appeal waiver provision to ensure it was in Grindle's best interest.

On this record, there is nothing to suggest that any cognitive defect prevented Grindle from making a cogent decision about the appeal waiver, especially where he unambiguously agreed that he understood its terms. *See Dixon*, 901 F.3d at 1342. The district court

inquired into Grindle's capacity, Grindle's attorney stated that Grindle was competent to proceed, and Grindle made a statement under oath -- which we presume to be true -- that he understood the appeal waiver provision. *See Winthrop-Redin*, 767 F.3d at 1217. Nor were there any other indications during the plea colloquy that Grindle did not understand the proceedings. The record also shows that the district court specifically questioned Grindle to ensure he understood the plea agreement and was waiving his right to appeal his sentence under most circumstances. Thus, we conclude that Grindle had the capacity to enter into the appeal waiver and that he knowingly and voluntarily waived his right to appeal his sentence. *See Bushert*, 997 F.2d at 1351; *Dixon*, 901 F.3d at 1342.

Further, none of the express exceptions to the appeal waiver apply. Grindle's 87-month concurrent imprisonment sentences were at the low end of the 87-to-108-month guideline range the district court calculated at sentencing. The government has not appealed Grindle's sentence, and Grindle has not raised a claim of ineffective assistance of counsel. Therefore, Grindle's challenges to the procedural and substantive reasonableness of his sentence fall within the scope of his sentence appeal waiver.

We GRANT the government's motion to dismiss this appeal based on the appeal waiver in Grindle's plea agreement. *See Buchanan*, 131 F.3d at 1008; *Bushert*, 997 F.2d at 1351.

**DISMISSED**.